IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON LOUISE HARR,)
)
    Plaintiff,)
)
 -vs-) Civil Action No. 13-1532
)
CAROLYN W. COLVIN,)
COMMISSIONER OF SOCIAL SECURITY,)
)
    Defendant.)

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 10 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 11 and 13). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting the Defendant's Motion for Summary Judgment and denying the Plaintiff's Motion for Summary Judgment.

### I. BACKGROUND

Sharon Louise Harr ("Harr") appeals under 42 U.S.C. § 405(g) of a final administrative decision of the Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. Harr claims to suffer from both physical and mental disabilities, including rheumatoid arthritis, COPD, tremors, fibromyalgia, depression and anxiety. She was born on August 5, 1956 and was 53 years of age on her alleged onset date (September 30, 2010). (R. 22) She is insured for DIB through December 31, 2014 and has a work history as a director of operations for senior centers. (R. 32-33) Harr has

1

not engaged in substantial gainful employment since her onset date.

She filed an application for a period of disability and for disability insurance benefits on December 15, 2010. That claim was denied and Harr requested a hearing. Harr appeared and testified at a hearing on March 13, 2012 before Administrative Law Judge Lawrence ("ALJ") Neary. Irene H. Montgomery, a vocational expert, also appeared and testified. The ALJ issued a decision dated May 1, 2012 denying Harr's claim for benefits. Harr then filed an appeal with the Appeals Council. That appeal was denied and she timely filed an appeal with this Court.

The parties have filed Cross-Motions for Summary Judgment (Docket Nos. 10 and 12). The issues are now ripe for review.

## II. LEGAL ANALYSIS

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### A. Discussion

Harr argues that: (1) the ALJ erred in finding that she did not meet the requirement of Listing 14.09 for Rheumatoid Arthritis; (2) the ALJ committed reversible error in failing to find that Harr was fully credible in her subjective complaints of pain and other disabling symptoms; and (3) the ALJ failed to create an accurate assessment of her Residual Functional Capacity

3

("RFC"). I will address each contention seriatim.

1) Listing 14.09 – Rheumatoid Arthritis

Harr urges that the ALJ erred in concluding that she did not meet or equal Listing 14.09A, which addresses inflammatory arthritis. Listing 14.09 defines "Inflammatory Arthritis" as described in 14.00D6, as follows:

A.  Persistent inflammation or persistent deformity of:

   1.  One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or

   2.  One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09A. After careful consideration, I disagree with Harr's contentions. Substantial evidence supports the ALJ's conclusion that Harr did not meet or equal Listing 14.09A.

With respect to subsection 1, Harr's ability to "ambulate effectively," there is no indication that she used an assistive device to walk; her gait was described as normal and stable (R. 621, 656, 658-59); and she demonstrated negative straight leg raising (R. 621). Further, upon examination, she did not show a lack of stability (R 621, 656, 658-59, 684). Nor did Harr identify any physician who opined that she met the requirements of Listing 14.09A(1) or otherwise state that she was unable to ambulate effectively as a result of the persistent inflammation or persistent deformity of one or more major peripheral weight-bearing joins. (R. 19) Indeed, as noted by the ALJ, Harr's ongoing treatment seems to consist entirely of medication, which her treating physician observes she is tolerating well. (R. 19, EX 12F, 14F, 18F). Additionally, in a Physical Residual Functional Capacity assessment prepared by Dr. Jan B. Mari-Mayans, Harr was assessed capable of performing a full range of light work. (R. 60-61).

As concerning subsection 2, "persistent inflammation / deformity of one or more

4

peripheral joints in each upper extremity resulting in the inability to perform fine and major gross movements effectively," I similarly find that substantial evidence of record supports the ALJ's conclusion that Harr did not meet or equal Listing 14.09A. For instance, at a March 2011 examination, Dr. Durre Ahmed found that Harr's "fine dexterous movements" were normal. (R. 621). She was able to pick up a coin from a flat surface; able to open a doorknob; and able to open containers by twisting movements. (R. 621). In terms of gross motor skills, he limited her only in the sense of saying that she could occasionally carry and lift 10 pounds. (R. 623). Thus, there is record evidence indicating that Harr is able to perform both gross and fine motor skills effectively. Additionally, Dr. Ahmed recorded full range of motion with respect to Harr's shoulders, elbows and wrists. (R. 625-26). Similarly, Dr. Kim's notes on December 15, 2010 indicate an absence of swelling to her shoulders, elbows and wrists during the musculoskeletal examination as well as a normal range of motion. (R. 440). Again, Dr. Kim noted that Harr was "stable" and tolerating her treatment well. (R. 441). On December 20, 2010 Dr. Kim recorded that Harr had "normal range of motion" with respect to both her left and right shoulders, elbows and wrists. (R. 448). Further, she had no swelling of her left shoulder, elbow or wrist, or her right shoulder or elbow. (R. 448). There was some swelling in her wrist. (R. 448). In Progress Notes dated September 16, 2009 and May 28, 2009, Harr is reported to have stated that; overall, her rheumatoid arthritis is "doing well." (R. 461-62).

The fact that Harr received continued Remicaid infusions does not establish that she meets Listing 14.09A. She must either be unable to ambulate effectively or unable to perform fine or gross motor skills effectively as a result of the persistent inflammation or deformity. Substantial evidence of record supports the ALJ's conclusion that Harr fails to satisfy this standard.

    2)     Harr's Subjective Complaints of Pain

Harr also contends that the ALJ erred by not according her full credibility with respect to

her complaints of pain and other disabling symptoms. As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and second, the ALJ must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 19). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reason for rejecting non-medical testimony. *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). In determining the limits on a claimant's capacity for work, the ALJ will consider evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. § 404.1529(c)(4). I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

After reviewing the record, I find the ALJ's conclusion that Harr's impairments could reasonably cause some, but not completely debilitating, pain, to be supported by substantial evidence. Harr does point out that she received regular Remicaid infusions. Yet the medical records indicate that she tolerated the treatment well, that her rheumatoid arthritis was stable and under good control. (R. 441, 444, 662, 664, 692, 695, 697). Additionally, upon physical examination, her treating physicians observed her to be in no acute distress, with no edema, cyanosis or tenderness, with intact cranial nerves, intact light touch, normal range of motion, good strength and tone, and normal reflexes. (R. 440, 621, 625-28, 656, 658-59, 663, 668, 696).

6

Further, though Harr contends that the pain was so debilitating as to essentially confine her to her home, there is evidence in the record indicating both that she exaggerates her symptoms and that her physicians reject the notion that her condition / pain confines her in the manner she suggests. (R. 692, notes from 1/26/12 visit with Dr. Patricia Moore: "Pt's gait is probably normal also she greatly embellishes her unsteadiness – she actually needs pretty good coordination to accomplish this." And "I encouraged her to get out more – walking, gardening, and swimming, as this would likely improve her balance and better her socialization."). Finally, Harr was able to perform a wide range of daily activities, such as caring for her personal needs, preparing simple meals, cleaning, doing laundry, shopping and caring for her pets. (R. 41-43). Given this substantial evidence of record, I reject Harr's contention that the ALJ's decision was unsupported.

3) Harr's Residual Functional Capacity[1]

In determining whether a claimant can return to past relevant work or perform any other work an ALJ must assess a claimant's residual functional capacity. Harr contends that the ALJ failed to create an accurate RFC that incorporated all of Plaintiff's limitations. After careful consideration, I disagree.

Here, the ALJ had determined that Harr had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she is limited to standing and walking one hour or less in an eight hour work day. The ALJ imposed no sitting limitations but did impose limitations with respect to occasional postural activities and the avoidance of temperature extremes, dust and humidity. (R. 19). Harr urges that this finding lacks evidentiary support. In support of this argument she points to her continued diagnoses of rheumatoid

---

[1] RFC refers to the most a claimant can still do despite his/her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions and the individual's subjective allegations and description of his/her own limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

7

arthritis and fibromyalgia, her regular Remicaid infusions, her diagnosis of reflex sympathetic dystrophy, her self-reported restrictions on her daily life activities and her chronic pain. *See* ECF Docket No. [11], p. 16-18.

Yet, as stated above, Harr's diagnoses of fibromyalgia, reflex sympathetic dystrophy and rheumatoid arthritis do not preclude a finding that she is capable of sedentary work. Indeed, the ALJ's decision that she is capable of such work, with restrictions, is supported by substantial evidence of record. Her treating physician prescribed a regimen of Remicade infusions and the medical records confirm that Harr "tolerated" the regimen "well." (R. 441, 444, 662, 664, 695, 697). At each visit with Dr. Kim, he noted that her rheumatoid arthritis was "stable" and that she did not appear to be in "acute distress," nor was there any edema, cyanosis, and she had normal range of motion. (Id.).

Other medical evidence of record is consistent. For instance, Dr. Eckels, Harr's primary care physician, noted on August 22, 2011, that Harr had a normal gait. (R. 684). Additionally, Harr presented to Dr. Farooq Khan on June 14, 2011 and July 18, 2011. On each occasion, examination revealed that Harr showed no impairment of attention, concentration or memory and that she had full strength and tone as well as normal reflexes. (R. 655-56, 658-59). Further, Dr. Khan also observed that Harr demonstrated a "normal gait" (with the exception of some difficulty with tandem walking). (R. 656, 658-59).

Similarly, Dr. Moore, who evaluated Harr on January 26, 2012 for evaluation of tremors and falls, found that Harr did not suffer from any deficits with respect to attention or concentration. (R. 692). She noted that Harr's gait was likely normal and that she "greatly embellished" her unsteadiness. (R. 692). Dr. Moore found Harr's rheumatoid arthritis to be under good control and she encouraged Harr to be more physically active and suggested walking, gardening, and swimming, indicating that such activities would improve her balance and her socialization. (R. 692). An electroencephalogram (EEG) performed on January 30,

8

2012 for the purpose of evaluating Harr's tremors and falls, was normal. (R. 693).

Dr. Ahmed performed a consultative examination on March 4, 2011. He found that Harr had no edema, displayed good pulse, was alert and oriented, and had good strength and tone. Further, though she demonstrated a shaking hand at times during the examination, "when not observed, she does not have any tremor." (R. 621). Moreover, she was able to pick up a coin from a flat surface, open a doorknob and open containers by a twisting movement. (R. 621). He found that though she was complaining of knee pain, her leg raising test was negative sitting and supine and she displayed a normal range of motion of cervical, shoulder, elbow, wrist, hip, knee, ankle and lumbosacral spine. (R. 621). He concluded that she would be able to lift and carry 10 pounds occasionally; stand and walk for 1 hour or less in an 8-hour work day; occasionally perform postural maneuvers and would be restricted with regard to temperature extremes, dust and humidity. (R. 623-24). The state agency physician, Dr. Juan Mari-Mayans, opined that Harr could perform light work. (R. 60-61).

This constitutes substantial evidence of record to support the ALJ's findings with respect to residual functional capacity. Insofar as Harr challenges the ALJ's hypothetical question posed to the vocational expert, the Third Circuit Court of Appeals instructs that the "hypothetical question must reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), *citing, Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984). Indeed, "the hypotheticals posed must 'accurately portray' the claimant's impairments and … the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Johnson v. Comm'r.*, 529 F.3d 198, 206 (3d Cir. 2008), *quoting, Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

I find that the ALJ's question posed to the vocational expert accurately reflected all the limitations identified in the residual functional capacity assessment. Specifically, the ALJ posed the following hypothetical:

> Q: Assuming hypothetical number two, I suppose this individual is limited to sedentary work and [INAUDIBLE] limited to standing and walking one hour or less in an eight hour day, no limitation on sitting, limited to occasional postural activities and the need to avoid temperature extremes, dust and humidity. Could that hypothetical individual perform any of the past jobs that you described? A: Yes, judge, that would not compromise the position.

(R. 51).[2] Because the ALJ's residual functional assessment is supported by substantial evidence, and because the hypothetical question posed to the vocational expert accurately reflected the RFC, the VE's testimony regarding the existence of jobs that Harr could perform within those limitations constitutes substantial evidence supporting the ALJ's determination that Hill was not disabled. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

---

[2] The vocational expert had previously stated that Harr could perform her past position. (R. 51).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON LOUISE HARR, | ) |
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 13-1532 |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 3rd day of September, 2014, it is ordered that the decision of the ALJ is affirmed. The Defendant's Motion for Summary Judgment (Docket No.12) is granted and the Plaintiff's Motion for Summary Judgment (Docket No.10) is denied.

                                            BY THE COURT:

                                            s/ Donetta W. Ambrose
                                            Donetta W. Ambrose
                                            United States Senior District Judge